# EXHIBIT "E"

ORIGINAL

VOLUME: I
PAGES: 1 - 61
EXHIBITS: 1 - 9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

C.A. No. 07-256S

DAVID M. CIAMPI,
Plaintiff,

vs.

ETSUKO MOTOKI ZUCZEK, in her capacity as Finance Director of the Town of Westerly; PAUL CORINA, in his capacity as Superintendent of Water of the Town of Westerly; and PETER CHIARADIO, in his capacity as Superintendent of Public Works of the Town of Westerly,
Defendants.

**DEPOSITION OF ANTHONY J. TURCO**, a witness called on behalf of the Defendant, Town of Westerly, taken pursuant to Rule 30 of the Federal Rules of Civil Procedure, before Jacqueline Curran, Registered Merit Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the law offices of Pierce, Davis & Perritano, LLP, 90 Canal Street, Boston, Massachusetts, on Friday, May 30, 2008, commencing at 11:08 a.m.

A. Uh-huh. Yes.
Q. Can you just describe for me your general knowledge of the property?
A. It's a piece of vacant land that the family used to park the car to go to the beach across the street.
Q. Can you describe for me -- well, strike that.
Have you ever had an ownership interest in the property?
A. No.
Q. And just to clarify, this is -- we are discussing the property at 486 Atlantic Avenue in Westerly?
A. If that's what you want to talk about, yes.
Q. Has any family member ever had an ownership interest in the property?
A. Yes.
Q. And who would that be?
A. Would be my mother, my father, my sisters at successive times.
Q. Now, did your mother and father own the property together?

A. Yes, they did.
Q. Do you recall the dates in which they owned the property?
A. Before I was born. You'd have to check the registry for that.
Q. And how did your sisters come into ownership of the property?
A. Through my mother and father.
Q. And was the property passed down to your sisters?
A. Yes, it was. Through my mother. My father died, it went to her, my mother conveyed it to my sisters.
Q. Do you recall what year your sisters gained ownership of the property?
A. To be honest, no. Sometime after my father died.
Q. And do you know what year your father passed away?
A. 1947.
Q. And now, just to clarify, the sisters that you are mentioning, which sisters came into ownership of the property?
A. Rose and Carol. There's only two

sisters.

Q. My apologies. And for how long did Rose and Caroline own the property at Atlantic Avenue?

A. I don't know. You'd have to check the registry on that.

Q. Now, during the period that Rose and Caroline owned the property, were there ever improvements made on the land?

A. No.

Q. Now, are you aware of any improvements to the property after Rose and Caroline's ownership?

A. No.

Q. Mr. Turco, do you know is there any reason why your family did not improve upon the land at 486 Atlantic Avenue?

A. With eight children, one in medical school, dental school and educating everybody else, no, there wasn't enough to go ahead and build a second home. As I said, the property was used to park the automobile, use the beach across the street which were right-of-ways that were set up all along the beach on

benefit, whether individually or through a trust. Right now, I can't remember.

Q. So when the property exchanged hands to or the title transfer to Mr. Ciampi, that was from the trust?

A. That is correct.

Q. To Mr. Ciampi?

A. That is correct. To the best of my recollection. Again, Attorney Toscano handled that.

Q. Mr. Turco, during the process of selling the property to Mr. Ciampi, did he ever inquire whether the property could be built upon?

A. Did he inquire? I believe he did. He did his due diligence.

Q. And did he ever contact you about building on the property?

A. Never gave him any opinion for that. That was up to him.

Q. Did you ever speak with Mr. Ciampi at all during the sales process?

A. Oh, sure.

Q. And can you just describe for me the

nature of those conversations?
A. Which one? Regarding what?
Q. How many times would you say you spoke with Mr. Ciampi during the sales process?
A. Numerous.
Q. And can you quantify that for me at all?
A. Probably say 20 to 25 to pick a number over a period of two years or three years, whatever it was. He signed the contract in 2000. The property wasn't conveyed until 2003.
Q. And during this period, would you say that the conversations you had with Mr. Ciampi were related to the condition of the property?
MS. NOONAN: Objection.
A. I wouldn't say the condition. What I would say is his efforts in order to be able to do what he wanted to do with the property. My understanding was he wanted to build a house, but in order to build a house, he had to go through at least two state agencies.