UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                     )
David M. Ciampi,                     )
                                     )
            Plaintiff,               )
                                     )
      v.                             )    C.A. No. 07-256 S
                                     )
Etsuko Motoki Zuczek, in her         )
capacity as Finance Director         )
of the Town of Westerly,             )
Paul Cornia, in his capacity         )
as Superintendent of Water           )
of the Town of Westerly,             )
and Paul Charadio in his             )
capacity as Superintendent           )
of Public Works of the               )
Town of Westerly,                    )
                                     )
            Defendants.              )
_____)
```

## OPINION AND ORDER

William E. Smith, United States District Judge.

In this action, the Plaintiff, David Ciampi, seeks to hold the Town of Westerly liable for the presence of a rain water drainage ditch on his property and for installing and maintaining an underground waterline across another portion of his property.

The Town has moved for summary judgment arguing it has acquired a prescriptive easement over the drainage ditch and disclaiming any ownership responsibility for the waterline. Because material issues of fact are still in dispute surrounding the creation of the drainage ditch, summary judgment on this issue is denied. There are no material facts in dispute, however, with

respect to Plaintiff's claims relating to the waterline, procedural and substantive due process, and indemnity. Thus, the Town's motion on these counts is granted.

I. Background

In his amended complaint, Plaintiff pled a total of six counts: eminent domain (Count I);[1] violations of procedural and substantive due process, 42 U.S.C. § 1983 (Counts II & III); and state law claims for trespass, unjust enrichment and indemnification (Counts IV-VI). This action was originally commenced in Rhode Island Superior Court. After Plaintiff amended his complaint almost one year later, Defendants successfully removed the case to this Court pursuant to 28 U.S.C. § 1441(a).

Plaintiff's property is located at 486 Atlantic Avenue, Westerly, Rhode Island. The parcel is approximately a quarter acre in size and is sandwiched between Block Island Sound and Winnapaug Pond. During periods of heavy rain, Atlantic Avenue, the main road running east to west directly in front of the property, floods and

---

[1] Although not specified as a state or federal cause of action in the complaint, this Court treats Count I as a state law claim. Because this case originated in Rhode Island Superior Court, the Court assumes that Plaintiff is attempting to utilize state procedures for obtaining just compensation. See Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985). The Court will not consider Count I as arising under federal law since such a claim would not be ripe for federal review. See id. (holding a takings claim is only ripe for federal review after a party has obtained a final decision regarding the property interest and has utilized the state procedures for obtaining just compensation).

2

becomes impassible. To alleviate the potential for flooding, the Town has constructed drainage ditches or swaleways that are designed to channel water off Atlantic Avenue in the direction of Winnapaug Pond.

Plaintiff first visited the unimproved property in August of 2000. Shortly thereafter, he entered into a written purchase and sale agreement with the owner, the Caroline G. Turco Family Trust[2] and began obtaining the necessary permits required to build a house on the property.

During an inspection by his engineer, Plaintiff discovered one of the Town's unrecorded drainage ditches obscured underneath the property's dense vegetation. The ditch traversed northeast from the western edge of the property to the northern property boundary.[3] It is undisputed that the Town created this ditch long before Plaintiff took title to the land. There is, however, a great deal of dispute as to exactly when it was created.[4]

---

[2] Anthony Turco, the brother of the Trust's namesake, executed the agreement in his capacity as Trustee.

[3] The ditch actually begins on an adjacent neighbor's property before crossing onto Plaintiff's land.

[4] Defendants have offered deposition testimony from two neighbors, Mr. Henry and Mr. Dubreuil, and two town employees, Mr. Palumbo and Mr. Antorch. All of these individuals are familiar with the property and have specific recollections of the ditch. When considered together, their testimony suggests the ditch has existed since at least 1978 if not earlier.

Plaintiff, to counter this evidence, offers the testimony of another town employee, Mr. Fusaro, and Mr. Turco, whose parents

Despite the presence of the ditch, Plaintiff moved forward with the closing, took title to the property on December 18, 2003, and began construction of a summer/vacation house. While building a fence, contractors discovered an unrecorded subterranean waterline running north to south through the property. No easements for subterranean waterlines are recorded on the property.

Further investigation revealed that the two-inch waterline connected two of the Plaintiff's neighbors to the Town watermain on Atlantic Avenue. Town records indicate the waterline was installed sometime in 1959. While the records do not reveal who installed the waterline, it is the Town's long-standing practice to only run waterlines up to the border of private property. From there it is the responsibility of each property owner to extend the line to his or her home. The Town vehemently denies that it had anything to do with the installation of the waterline on Plaintiff's property and maintains that it is not responsible for it.

II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

---

owned the property dating back to before 1947. When directly questioned about the ditch on Plaintiff's property, Mr. Fusaro stated he had no doubt that a swaleway was cut on the Ciampi property in the early 1990s as part of a project to alleviate flooding along Atlantic Avenue. Mr. Turco testified that he had been to the property many times when his family would take trips to the beach and had no knowledge of the ditch until Plaintiff brought it to his attention during the executory phase of the sales agreement.

4

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party," id. at 960, and an issue of fact is "material" "only when it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996).

Initially, the moving party must show "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If established, the nonmoving party must present facts that demonstrate a genuine trialworthy issue remains. Cadle, 116 F.3d at 960. This burden can be satisfied by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993).

A nonmoving party must beware that "establishing a genuine issue of material fact requires more than effusive rhetoric and

optimistic surmise." Cadle, 116 F.3d at 960. "If the evidence [adduced in opposition to the motion] is merely colorable, or is not significantly probative, summary judgment may be granted." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). It is never sufficient to offer "conclusory allegations, improbable inferences, and unsupported speculation." Id. (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

III. Analysis

A.  Waterline Claims

Plaintiff's claims for trespass and unjust enrichment, as set forth in Counts IV and V of the amended complaint, are premised on the presence of both the drainage ditch and the waterline. Since the waterline and the ditch were created independently the Court will consider them separately. For the reasons explained below, summary judgment is only appropriate on the waterline aspects of Counts IV and V.

To sustain an action for trespass in Rhode Island, a plaintiff must show that a defendant entered his property. Ferreira v. Strack, 652 A.2d 965, 969 (R.I. 1995); Berberian v. Avery, 205 A.2d 579, 581-82 (R.I. 1964) (citing Mosby v. Goff, 44 A. 930 (R.I. 1899)). The only objective evidence Plaintiff offers to support his claim that the Town entered onto his property and installed the waterline is the fact that the waterline connects to a shutoff valve before it splits off to connect two of Plaintiff's neighbors,

and that the pipe is two-inches in diameter as opposed to one-inch. Plaintiff contends that a two-inch pipe is more consistent with a municipal application as opposed to a private use, but concedes he has no knowledge as to whether two-inch pipe was the standard in 1959, let alone who installed the line.[5]

The Town, on the other hand, produced evidence that its long and established practice is not to install pipes on private property unless the person requesting service is the land owner, or has an easement. Further, pipes on private property are ordinarily the responsibility of the land owner, and the Town is only responsible for water service lines that run from the water main to the border of private property. Plaintiff attempts to rebut this evidence with the fact that at least once in the Town's history a waterline was run improperly across a landowner's property. However, nothing in the record suggests that is what happened in this case and to infer otherwise is to engage in rank speculation.

Thus, because Plaintiff has not come forward with any evidence to suggest there is a genuine issue as to whether the Town

---

[5] In his written submissions, Plaintiff also stated that he has an independent recollection of seeing markings that would tie ownership to the Town. But see Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001)(statements contained in a memorandum or lawyer's brief are insufficient to establish material facts). The record contains no evidence that the pipe was ever dug up and physically inspected. Moreover, at oral argument Plaintiff's counsel clarified this point stating "Mr. Ciampi did not see on the actual water line that was uncovered the words "Town of Westerly." Tr. at page 45 line 9-10.

installed the waterline on Plaintiff's property, summary judgment in favor of the Defendants is appropriate.

Plaintiff's claim for unjust enrichment based on the presence of the waterline must meet the same fate as the trespass claim. To recover for unjust enrichment, a plaintiff must prove (1) that a benefit was conferred upon the defendant by the plaintiff, (2) that the defendant has an appreciation for such benefit, and (3) that the defendant accepted the benefit in such a way that it would be inequitable for the defendant to retain the benefit without paying for it. Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006); see also Bouchard v. Price, 694 A.2d 670, 673 (R.I. 1997). However, "[s]imply conferring a benefit . . . is not sufficient to establish a claim for unjust enrichment. 'The most significant requirement . . . is that the enrichment to the defendant be unjust.'" R&B Elec. Co. v. Amco Const. Co., 471 A.2d 1351, 1356 (R.I. 1984) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966)).

In this case, there is no evidence to suggest the Town wrongfully accepted a benefit. This case stands in stark contrast to those cases where a defendant blatantly and wrongfully enriches himself at the expense of a plaintiff. See e.g. Narragansett, 898 A.2d at 99 (liability under theory of unjust enrichment held proper where defendants illegally had bypassed the electric company's billing meter). Even though Town water passes through the pipe and

the Town derives fees for providing this water service, Plaintiff's inability to show that the Town had anything to do with the installation of the pipe precludes the conclusion that this nominal benefit to the Town is unjust. Consequently, summary judgment in favor of the Defendants is appropriate.

B. Procedural Due Process

Count II is based on the idea that the Town violated Plaintiff's procedural due process rights by creating and maintaining the ditch. A claim for denial of procedural due process challenges the constitutional adequacy of the state law procedural protections accompanying a deprivation of a protected interest such as life, liberty, or property. Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citing Parratt v. Taylor, 451 U.S. 527, 537 (1981)). Under this theory, it is not the deprivation itself that is actionable; rather it is the alleged lack of due process associated with deprivation. Id.; see also Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 534-35 (1st Cir. 1995).

The First Circuit, in summarizing the applicable Supreme Court precedent, has stated that "[w]hen a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, . . . the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state." Hadfield v. McDonough, 407 F.3d 11, 19 (1st Cir. 2005) (internal quotations and citation omitted). An act is random and

unauthorized when it is a flaw in a government official's conduct rather than a flaw in the underlying state law itself. Id. at 20; see also Brown, 68 F.3d at 536-37. The doctrine thus permits "procedural claims to be resolved in state forums where states . . . provide adequate remedies." Hadfield, 407 F.3d at 20 (quoting O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000)).

It is undisputed that the creation of the ditch occurred prior to Plaintiff owning the property, so it is by no means clear that the Plaintiff was ever deprived of any property interest. But assuming the Town did deprive Plaintiff of a protected interest, the facts clearly suggest it was a result of the Town's inadvertence and mistake as to whether it had a right to do so. See Herwins v. City of Revere, 163 F.3d 15, 19 (1st Cir. 1998) (stating negligent or deliberate acts constituting mistakes by local officials satisfy the random and unauthorized requirement).

Therefore, in order to find a procedural due process violation, Plaintiff must show that his post-deprivation remedies are inadequate. Plaintiff offers nothing to suggest that his claim for eminent domain, which is present in this very action, is not adequate to address his alleged loss. His contention that the Town has not directly provided a post-deprivation remedy misunderstands the due process right. The Town need not custom tailor a form of process to Plaintiff's specific circumstances; on the contrary, there need only exist an adequate statutory or common law remedy

that the Plaintiff can utilize to redress the claimed deprivation. As long as the Plaintiff has a meaningful way to seek just compensation, which he has, there is no violation of procedural due process. See e.g. Culebras Enters. Corp. v. Rivera Rios, 813 F.2d 506, 514 (1st Cir. 1987). Therefore, Defendants' motion for summary judgment on Count II must be granted.

   C.  Substantive Due Process

Count III of the complaint charges the Town with violating Plaintiff's substantive due process rights. "[W]ith a regularity bordering on the monotonous" the First Circuit has clearly stated that "to be liable for a violation of substantive due process rights, a defendant must have engaged in behavior that is conscience-shocking." Mongeau v. City of Marlborough, 492 F.3d 14, 17 (1st Cir. 2007) (internal citation omitted). While substantive due process allegations are of course, context-specific, Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006), they are reserved to render relief only in the "truly horrendous situations." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (internal citation omitted). A "substantive due process claim implicates the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990). In evaluating the suspect state action,

the conduct must be stunning, egregiously unacceptable, outrageous, or conscience-shocking and evidence more than humdrum legal error. Id. at 754.

Here, the Town dug a ditch to drain water. Putting aside the fact that Plaintiff purchased the property with full knowledge that this ditch existed, there is no way this commonplace behavior crosses the threshold of a conscience-shocking constitutional violation. Despite Plaintiff's grandiloquence to the contrary, "[c]harges that substantive due process was denied cannot rest on conclusory allegations or rhetoric alone (even impassioned rhetoric)." Amsden, 904 F.2d at 757. Plaintiff's claim of a substantive due process violation in these circumstances is frivolous and should not have been asserted. Summary judgment in favor of Defendants is therefore appropriate on Count III.

D. Indemnification

Defendants suggest in a two-sentence footnote that this Court can simply ignore Count VI based on an interpretation taken from a legal dictionary.[6] This kind of terse and dismissive analysis is

---

[6] Plaintiff did not address this point in his submission. Nonetheless, the Court will address this claim as the record is sufficiently developed.

The Court does not see this as an instance where it is invoking its sua sponte power to find summary judgment. However, even so, an exercise of this power would be appropriate considering the stage of discovery and that Defendants' mention of Count VI gave Plaintiff sufficient reason to believe the Court might reach the issue. Leyva v. On The Beach, Inc., 171 F.3d 717, 720 (1st Cir. 1999); Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555,

not particularly helpful. Not surprisingly, the Court's own research has revealed that there is more to the law of indemnity in Rhode Island than Defendants suggest.

The Rhode Island Supreme Court has made clear that a party may sue for indemnification based on either an express contractual provision or equitable principles.[7] Rhode Island Depositors Econ. Prot. Corp. v. Hayes, 64 F.3d 22, 25 (1st Cir. 1995); see also Wilson v. Krasnoff, 560 A.2d 335, 341 (R.I. 1989) (citing Helgerson v. Mammoth Mart, Inc., 335 A.2d 339, 341 (R.I. 1975)). "[A]n equitable right to indemnity exists when one has been held liable solely because of the wrongful act of another." Wilson, 560 A.2d at 341 (citing Muldowney v. Weatherking Prods., Inc., 509 A.2d 441, 443 (R.I. 1986)).

Three elements are necessary to prove a claim for equitable indemnity: (1) the party seeking indemnity must be liable to a third party; (2) the prospective indemnitor must also be liable to the third party; and (3) as between the prospective indemnitor and indemnitee, equity requires the obligation be discharged by the potential indemnitor. Rhode Island Depositors, 64 F.3d at 26 (citing Muldowney, 509 A.2d at 443-44).

---

1561 (1st Cir. 1989); see also Corrada Betances, 248 F.3d at 43 ("A party who opposes a properly substantiated motion for summary judgment but fails to muster counter-affidavits or other evidentiary materials does so at his peril.")

[7] Plaintiff has not alleged such a provision exists. Thus, Count VI is construed as equitable.

On the record before the Court, there is no evidence that tends to prove any of the necessary elements of indemnification. From the voluminous material the parties did provide, nothing suggests that either Plaintiff or the Town are liable to any third-parties. Hence, Plaintiff's claim for indemnification does not fit. Summary judgment in favor of the Defendants is therefore appropriate on Count VI as well.

E. Drainage Ditch Claims

The remainder of Plaintiff's complaint deals with state law causes of action for eminent domain, trespass, and unjust enrichment.[8] Defendants defend against these claims by asserting that the Town has acquired an easement over the ditch by

---

[8] Because the Court has dispatched all of the federal questions in this case, a few words on subject matter jurisdiction are in order. When claims conferring original jurisdiction pursuant to 28 U.S.C. § 1331 are eliminated, the district court has discretion to hear the remaining state law claims at issue pursuant to 28 U.S.C. § 1367(c)(3) taking into account concerns of comity, judicial economy, convenience, fairness, and the like. Penobscot Indian Nation v. Key Bank of Me., 112 F.3d 538, 564 (1st Cir. 1997) ("In a federal question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion.") (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)).
In this case, "[t]he litigation had matured well beyond its nascent stages." Roche, 81 F.3d at 257. Discovery has closed and the parties are approaching trial on issues that have been significantly narrowed. The Court is familiar with the underlying facts and cannot see a good reason to return this case back to the state court. Thus, the Court will exercise its broad discretion and continue to exercise supplemental jurisdiction over Plaintiff's state law causes of action.

prescription. See <u>Reitsma v. Pascoag Reservoir & Dam, LLC.</u>, 774 A.2d 826, 831 (R.I. 2001) (holding that the state may acquire property through adverse possession).

At the outset, there is a question as to whether the Defendants have waived the affirmative defense of prescriptive easement. Plaintiff objects that this affirmative defense was not raised in Defendants' answer. In response, Defendants urge the Court to conclude that although easement by prescription was not expressly pled, it was sufficiently preserved by a general denial. Hedging their bets, Defendants also request leave to amend under Rule 15.[9]

The Court has found no Rhode Island authority to support Defendants' assertion that a general denial is sufficient to preserve the affirmative defense of easement by prescription. Nevertheless the point is essentially moot and the Court need not examine the persuasive value of the cases cited by the Defendants, where the Court is inclined to allow the Defendants to amend their answer upon the filing of a proper motion. See <u>In re Cumberland Farms, Inc.</u>, 284 F.3d 216, 226 (1st Cir. 2002) (stating that the liberal pleading regime prescribed by the federal rules does not always preclude consideration of unpleaded claims or defenses); <u>Jones & Jones v. Pineda & Pineda</u>, 22 F.3d 391, 400 (1st Cir. 1994)

---

[9] Although Defendants made the request to amend in their response to Plaintiff's objection, such a request is insufficient under the local rules for this District. See D.R.I. LR Cv 7(a).

(when fairness dictates, strictures of "waive or raise" rule may be relaxed).

Such an amendment would not unfairly prejudice the Plaintiff. It appears much of the discovery has centered around whether the Town had permission or approval to create the drainage ditch, albeit the discovery on this point could have had more precision. Plaintiff's request for further selective and pinpointed discovery is therefore reasonable. While empathetic to Plaintiff's position, the Court does not believe these additional discovery demands will be so great as to create unfair prejudice.

Turning to the substance of Defendants' argument that the Town has acquired a prescriptive easement, summary judgment clearly is not appropriate on this ground. In order to prevail on a claim of prescriptive easement, Defendants must establish actual, open, notorious, hostile, and continuous use under a claim of right for ten years. R.I. Gen. Laws § 34-7-1. Reitsma, 774 A.2d at 831; see also Greenwood v. Rahill, 412 A.2d 228, 230 (R.I. 1980).

Crucial to the analysis is determining the start date for the prescriptive period. None of the evidence before the Court points to a single date, or for that matter even a specific year or decade. Evidence from each side reasonably suggests creation of the ditch in 1960s, 1970s, and even 1990s. Most important is the testimony of Mr. Fusaro that the ditch was created in the early 1990's. In the context of summary judgment, the Court must draw

the favorable inference to the non-movant that the Town dug the ditch sometime in 1995. This matters because Plaintiff took title in 2003 and the question of whether the ten year prescriptive period continued to run or was substantially interrupted after he took title to the land is still unanswered. See LaFreniere v. Sprague, 271 A.2d 819, 824 (R.I. 1970) (discussing under what circumstances a prescriptive period stops running); see also 2 C.J.S. Adverse Possession § 187 (stating the transfer of title to real property after the prescriptive period for adverse possession of the property has begun does not interrupt or terminate the running of the prescriptive period). Thus, if the prescriptive period did not run for the full ten years, then the Town may not have a legal right to be on Plaintiff's land and there is a genuine issue of material fact in dispute that must be resolved at trial.[10]

Defendants undoubtably would disagree with this analysis because they contend Plaintiff cannot be compensated for a taking that occurred prior to his ownership. See Palazzolo v. Rhode Island, 533 U.S. 606, 628 (2001) (noting the general rule that the right of just compensation does not pass to a subsequent

---

[10] The Court also finds support for its decision from the fact that the Rhode Island Supreme Court does not look favorably on prescriptive easement determinations made at the summary judgment stage. See Gardner v. Baird, 871 A.2d 949 (R.I. 2005)(factual determinations are generally necessary to determine whether claimants have established elements of a prescriptive easement); Stone v. Green Hill Civic Ass'n, Inc., 786 A.2d 387 (R.I. 2001) (prescriptive easement cases are highly fact dependent).

purchaser). This argument is flawed, however, because it assumes two things. First, it assumes physical occupation as the sole theory by which a taking could have occurred. And second, it assumes that if there was a taking it occurred prior to the Plaintiff's ownership.

As the Court reads Supreme Court and Rhode Island takings law, the facts of this case suggest several possible theories as to how a taking may have occurred during Plaintiff's ownership of the property. One possible theory is that a taking could have occurred upon the tolling of the ten year prescriptive period. See Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F. Supp. 2d 206, 227 n.6 (D.R.I. 2002) aff'd on other grounds 337 F.3d 87 (1st Cir. 2003) cert. denied 540 U.S. 1090 (2003)(holding that a taking by physical occupation and by adverse possession are two distinct events); see also Reitsma, 774 A.2d at 826. A second theory is that the flooding Plaintiff alleges the Town caused is of the type that could constitute a taking. In general, if flooding caused by government action is an actual, permanent invasion of the land amounting to an appropriation of property, a taking requiring just compensation results. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 428, 435 n.12 (1982) (stating a taking has always been found where flooding constitutes a permanent physical occupation); see also United States v. Dickinson, 331 U.S. 745, 749 (1947). Thus, if Plaintiff is able to establish either that the

18

prescriptive period tolled during his ownership or that the alleged flooding on his property became permanent during his ownership, his takings claim may prove successful.

The prescriptive easement question also bears on Plaintiff's claims for trespass and unjust enrichment. If the Town is unable to establish a prescriptive easement, the issue of trespass could then take center stage as the Town would have no right to be on Plaintiff's land. See Mesolella v. City of Providence, 508 A.2d 661, 668 n.8 (R.I. 1986) ("[a] continuing trespass is defined as [a]n unprivileged remaining on land in another's possession . . .") (citing Restatement (Second) Torts § 158 at 277 (1965)); Santilli v. Morelli, 230 A.2d 860, 863 (R.I. 1967). Unlike his takings claim, Plaintiff could be compensated irrespective of whether he had an ownership interest at the time the trespass first occurred. Adams v. Toro, 508 A.2d 399, 400-01 (R.I. 1986) (holding the fact that plaintiffs did not hold title at the time of encroachment immaterial to a claim of continuing trespass); see also Restatement (Second) Torts § 161 cmt. e (stating if the possessory interest in the land has been transferred subsequent to the actor's placing of the thing on the land, the transferee of the land may maintain an action for its continuance there). Thus, because the timing of when the Town created the ditch is crucial to the viability of the trespass claim, summary judgment is not appropriate.

The timing issue is equally important for the unjust enrichment claim because in order for Plaintiff to succeed he must be conferring a benefit on the Town. See Narragansett, 898 A.2d at 99. If the Town acquired a prescriptive easement, and thus a legal right to maintain the ditch, prior to Plaintiff's ownership, it does not follow that Plaintiff would then be conferring anything on the Town. Without the ability to confer a benefit, his unjust enrichment claim fails. This of course depends heavily on the actual date the Town created the ditch. Therefore, Defendants' Motion for Summary Judgment on Count I and Counts IV and V, as they relate to the drainage ditch, is denied.

IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in part as to Counts II, III, & VI and Counts IV & V (as they pertain to the waterline) and DENIED in part as to Count I and Counts IV & V (as they pertain to the drainage ditch). Defendants' request for costs and attorneys fees is DENIED.

It is so ordered.

_/s/ WSmith_
William E. Smith
United States District Judge
Date: 2/12/09

20